# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-14-00200-001-TUC-CKJ (CRP) |
| Plaintiff, | **REPORT & RECOMMENDATION** |
| v. | |
| Marco Antonio Centeno-Sanchez, | |
| Defendant. | |

Defendant is charged with attempted illegal re-entry, 8 U.S.C. § 1326, enhanced by 8 U.S.C. § 1326(b)(2), arising from his attempt to enter the United States at or near Nogales, Arizona, on January 4, 2014. (Doc. 5). Defendant has filed a "Motion to Preclude Statements for Violation of *Miranda* Rights & Voluntariness" (Doc. 12). The Government filed a Response (Doc. 24) and Defendant filed a Reply (Doc. 25). Defendant's Motion came on for hearing on May 19, 2014. Customs and Border Protections Officers ("CPBO") Jesus Zuniga and Emilia Moreno testified on behalf of the Government and Government Exhibits 1, 2, and 3 were admitted. A transcript (Doc. 31) of the hearing is forwarded to the District Court together with this Report and Recommendation.

For the following reasons, the Magistrate Judge recommends that the District Court, after its independent review, grant Defendant's Motion.

**DISCUSSION**

The parties do not dispute for purposes of this Motion that Defendant presented to the DeConcini Port of Entry on January 4, 2014, with an expired Legal Permanent Resident card issued in his name. (Motion, p. 2; Response, p.1).

On January 4, 2014, CBPO Zuniga was working in the Passport Control section of the DeConcini Port of Entry where Nogales, Arizona, borders Mexico. (Tr. at p. 7). Upon pulling Defendant's file, CBPO Zuniga removed Defendant from the detention cell where Defendant had been detained, finger printed him, and obtained a printout from the Integrated Automated Fingerprint Identification System, ("IAFIS") which he presented to his supervisor. (*Id.* at p. 9). CBPO Zuniga testified that the supervisor decides whether the case will be pursued as an "administration case" or a criminal case. (*Id.* at p. 10). After review of Defendant's IAFIS printout and contacting "the enforcement officers", CBPO Zuniga's supervisor directed that CBPO Zuniga proceed with a criminal case. (*Id.*) At this point, Exhibits 1 and 2 create confusion as to the sequence of what happened next.

Exhibit 1, which is Form I-214 captioned "Warning as to Rights-Interview Log", reflects that CBPO Zuniga advised Defendant of *Miranda* warnings[1] on January 4, 2014, at 22:40 and that Defendant waived his rights and agreed to answer questions at 22:40.[2]

---

[1] The warnings include: "You have the right to remain silent. Anything you say can be used against you in court, or in any immigration or administrative proceeding." (Exh. 1).

[2] CBPO's Zuniga report of the events stated:

The shift supervisor advised me that the subject would be an expedited

- 2 -

The time in both instances is hand-written.  CBPO Moreno, whose signature also appears on the Form as a witness, testified that she witnessed the reading of the warning to Defendant.  (Tr. at p. 46).  CBPO Moreno's signature also appears indicating she witnessed Defendant waive his *Miranda* rights.  (Exh. 1).  Although Exhibit 1 has a section captioned "Interview Log", none of the information required by that section has been provided.

Also admitted is Exhibit 2, which is another Form I-214 "Warning as to Rights-Interview Log."  Exhibit 2 reflects in typewritten format that CBPO Zuniga advised Defendant of his *Miranda* rights on January 4, 2014 at 22:30 and Defendant waived his rights at 22:45 that same date.  (Exh. 2).  Exhibit 2 is also signed by CBPO Moreno as witness to the reading of the rights and Defendant's waiver of same.  (*Id.*).  The interview log also reflects in typewritten format that the interview began on January 4, 2014 at 22:30, was completed and signed at 22:45 that same date.  (*Id.*).

Exhibit 3 is Form I-867A captioned:  "Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act" ("Sworn Statement"), and is dated January 5, 2014.  (Exh. 3, p.8[3]).  In pertinent part, the Form states:

> I am an officer of the United States Department of Homeland Security.  I am authorized to administer the immigration laws and to take sworn statements.  *I want to take your sworn statement regarding your application for admission to the United States.  Before I take your statement, I also*

---

 removal, and began to read I-214 warnings to the subject.

(Tr. at p. 36).  CBPO Zuniga clarified at the hearing that he was the person who advised Defendant of his *Miranda* rights.  (*Id.* at pp. 36-37).

[3] Page numbers cited for Exhibit 3 are the Bates stamp numbers appearing at the right bottom corner of each page.

- 3 -

*want to explain your rights, and the purpose and consequences of this interview.*

You do not appear to be admissible or to have the required legal papers authorizing your admission to the United States.  This may result in your being denied admission and immediately returned to your home country without a hearing.  If a decision is made to refuse your admission into the United States, you may be immediately removed from this country, and if so, you may be barred from reentry for a period of 5 years or longer.

*This may be your only opportunity to present information to me and the Department of Homeland Security to make a decision.  It is very important that you tell me the truth.  If you lie or give misinformation, you may be subject to criminal or civil penalties, or barred from receiving immigration benefits or relief now or in the future.*

*Except as I will explain to you, you are not entitled to a hearing or review.*

U.S. law provides protection to certain persons who face persecution, harm or torture upon return to their home country.  If you fear or have a concern about being removed from the United States or about being sent home, you should tell me so during this interview, *because you may not have another chance.*   You will have the opportunity to speak privately and confidentially to another officer about your fear or concern.  That officer will determine if you should remain in the United States and not be removed because of that fear.

Until a decision is reached in your case, you will remain in the custody of the Department of Homeland Security.

*Any statement you make may be used against you in this or any subsequent administrative proceeding.*

(*Id.*) (emphasis added).  CBPO Zuniga testified that he did not read the above text to Defendant verbatim.  (Tr. at p. 21).  Instead, he "sort of explained it to him before we started the questioning."  (*Id; see also id*. at p. 56 (CBPO Moreno testifying:  "you're supposed to read it [Form I-867A], but what I learned, either in training or as—on doing cases, most people don't understand when you read it as is.  So they understand better if

- 4 -

you explain, as long as you state like every single thing this covers.")).  CBPO Zuniga testified that he:

> told [Defendant] I was the officer who was going to take his sworn statement, and if he could answer the questions as briefly and as honestly and as truthfully as he could.
> I explained to him what the procedure was going to be, that I was going to ask him a couple of questions, based on what had happened, and what he was claiming about.  And I told him that, after I had finished—after we—after I finished the questioning, I can go ahead and answer any questions he needed to be answered.

(*Id.* at pp. 21-22).

The initial questions on the Sworn Statement, which appear immediately after the advisement that Defendant's statements may be used against him in "this or any subsequent administrative proceeding" include:

> Q. Do you understand what I've said to you?[4]
> A. Yes.
> Q. Do you have any questions?
> A. No.
> Q. Are you willing to answer my questions at this time?
> A. Yes.
> Q. Do you swear or affirm that all statements you are about to make are true and complete?
> A. Yes.

(Exhibit 3, p. 8). In answering the questions, Defendant made incriminating statements which the Government seeks to use against him in the instant criminal prosecution.

CBPO Zuniga testified that when he was conducting the interview of Defendant to obtain the answers reflected in the Sworn Statement, Exhibit 3, he did not have a paper copy of the Form in front of him; instead, as he interviewed Defendant, he typed

---

[4] CBPO Zuniga testified that he paraphrased this question.  (Tr. at pp. 33-34).

Defendant's answers into the computer. (Tr. at pp. 15-16). The Form is printed only after CBPO Zuniga has finished entering information into the computer system, which CBPO Zuniga referred to as "SIGMA." (*Id.* at p. 16 (The document submitted as Exhibit 3 did not exist in paper format until CBPO Zuniga had "completed [his] data entry into the computer and…printed…the documents."); *see also id.* at p. 21).

The reasons for asking the questions on Exhibit 3 in a case where the supervisor had determined to proceed with criminal prosecution are not entirely clear. CBPO Moreno testified: "we still ask the questions regarding administrative because, depending on the answers from the subject." (*Id.* at p. 54). CBPO Moreno also testified that "[s]ometimes" Form I-877, which is "mainly use[d]…for withdrawals, for notices to appear", is used when taking a statement for criminal prosecution; otherwise, Forms I-867A (Exhibit 3) and I-867B are used for expedited removals. (*Id.* at pp. 54-55).

Defendant argues that his statements were taken violation of *Miranda* and were involuntary. Defendant points out that CBPO Zuniga administered two sets of warnings: one set pertained to Defendant's *Miranda* rights and the other set pertained to Defendant's rights and obligations in the context of the immigration administrative proceeding. (Motion, p. 4). Given the indication in the Sworn Statement, Exhibit 3, that Defendant's statements would be used in the context of administrative proceedings, Defendant argues that his answers to those questions were not the product of his free and deliberate choice. (*Id.* at pp. 5-6).

"Regardless of circumstance, the *Miranda* warning must be read and conveyed to all persons clearly and in a matter that is unambiguous." *United States v. San Jan-Cruz,* 314 F.3d 384, 398 (9th Cir. 2002). Thereafter, a defendant may waive his *Miranda* rights as long as the waiver is voluntary, knowing, and intelligent. *Patterson v. Illinois,* 487 U.S. 285, (1988); *Moran v. Burbine,* 475 U.S. 412, 421 (1986); *Juan H. v. Allen,* 408 F.3d 1262, 1271 (9th Cir. 2005). To be knowing and intelligent, the defendant must have made the waiver "with a full awareness of both of the nature of the right being waived and the consequences of the decision to abandon it." *Moran,* 475 U.S. at 421. Only if the "'totality of the circumstances surrounding the interrogation'" reveals both an uncoerced choice and the requisite level of comprehension may the court properly conclude that a defendant has waived his *Miranda* rights. *Id.* at 421 (quoting *Fare v. Michael C.,* 442 U.S. 707, 725 (1979)); *see also United States v. Shi,* 525 F.3d 709, 727 (9th Cir. 2008) (the validity of a *Miranda* waiver depends on the totality of the circumstances, including the defendant's background, experience, and conduct); *United States v. Crews,* 502 F.3d 1130, 1140 (9th Cir 2007). There is a presumption against wavier, which the government bears the burden of overcoming by a preponderance of the evidence. *North Carolina v. Butler,* 441 U.S. 369, 375-75 (1979); *Crews,* 502 F.3d at 1140.

Moreover, the Government also has the burden of establishing that a confession was voluntary by a preponderance of the evidence. *United States v. Bautista*, 362 F.3d 584, 589 (9th Cir. 2004). "In evaluating voluntariness, the test is whether, considering the totality of the circumstances, the government obtained the statement by physical or

psychological coercion or by improper inducement so that the suspect's will was overborne." *Id.* (citation and internal quotations omitted). "In short, the true test of admissibility is that the confession is made freely, voluntarily, and without compulsion or inducement of any sort." *Haynes v. State of Washington*, 373 U.S. 503, 513–14 (1963) (citation and internal quotation marks omitted).

The documents regarding Defendant's waiver and statements reflect that either: (1) Defendant was advised of *Miranda* rights at 22:40 and waived his rights at that same time (Exh. 1); or (2) Defendant was advised of *Miranda* rights at 22:30, the interview began at 22:30 lasting until 22:45, and he waived his rights at 22:45 (Exh. 2). Under the latter scenario, Defendant's statements would have been made before he waived his *Miranda* rights.

CBPO Zuniga testified that this latter scenario is not the case. According to CBPO Zuniga, he advised Defendant of *Miranda* rights only once—at 22:40 as reflected in Exhibit 1. (Tr. at pp. 20, 26 (CBPO Zuniga had a hard copy of Form I-214 when he advised Defendant of his *Miranda* rights and Exhibit 1 is that hard copy); *see also id.* at p. 40). According to Defendant Zuniga, Exhibit 2, was generated by SIGMA after the interview had concluded and the computer assigned the times shown.[5] (*Id.* at p. 26 ("SIGMA generates the time by itself."); *see also id* at p. 39). CBPO Zuniga, who testified that he has no independent recollection of what time Defendant waived his rights

---

[5] According to Defendant Zuniga, Exhibit 2 "belongs inside SIGMA. This one…has to be inside SIGMA, due to the supervisor wants it to be inside the system." (Tr. at p. 19). He does not "have the option of not completing a second [I-]214 from SIGMA[.]" (*Id.* at p. 20). CBPO Moreno also testified that SIGMA generated Exhibit 2 and "we're required to generate it in SIGMA, as per policy." (*Id.* at p. 47).

- 8 -

and does not have a clear memory of the events of that evening (*id.* at pp. 26, 28-29, 35), is certain that the times reflected in Exhibit 1 are accurate and the times reflected in Exhibit 2 were generated by the computer and have no relevance to the order of events on the night he questioned Defendant. (*Id.* at pp. 20, 26, 39-40). CBPO Zuniga also testified that Defendant was advised under *Miranda* and waived his rights before CBPO Zuniga proceeded to ask him the questions in the Sworn Statement. (*Id.* at p. 22; *see also id.* at p. 40). CBPO Moreno agreed with CBPO Zuniga that the I-214 Form "we base our case on is the hard copy one" which was marked as Exhibit 1. (*Id.* at pp. 47-48).

Although the Sworn Statement, Exhibit 3 at page 1, reflects that the interview occurred on January 5, 2014, Defendant Zuniga confirmed the interview actually occurred on January 4, 2014, and the later date was generated by SIGMA.[6] (*Id.* at p. 32 ("the system generates the date…when the paperwork is printed out.")). Defendant Zuniga further testified that he mistakenly indicated on the Sworn Statement that the interview was conducted in Spanish when, instead, the interview was conducted in English. (*Id.* at pp. 31-32 ("I mistakenly did not change it in SIGMA."); *see also id.* at pp. 35-36; Exh. 3, p.8).

The Exhibits, when viewed together, provide no cogent rendition of the order or manner in which the reading of the *Miranda* warnings occurred, waiver occurred, and questioning occurred. CBPO Zuniga testified that his recollection of events was not entirely clear. However, both he and CBPO Moreno contend that Defendant was advised

---

[6] The certification appearing at the last page of Exhibit 3 reflects a January 4, 2014 date. (Tr. at p. 33; Exh. 3, p.15).

- 9 -

of *Miranda* and waived same at 22:40 per Exhibit 1 and that Exhibit 2 is only required "to be inside the system." (Tr. at p. 19). The record does not suggest any reason why the government would want to produce or maintain a document with allegedly incorrect times as to when a defendant was advised of and waived *Miranda* warnings or what purpose such document would serve. Yet, the conflict between Exhibits 1 and 2 is not the most troubling part of this case—"[m]ore important than the timing of the Government's warnings is whether the substance, content, and clarity of the warnings conveyed to [defendant]…his rights under *Miranda*." *San Juan-Cruz,* 314 F.3d at 389.

After having decided to prosecute Defendant and, if the government's version is to be believed, having obtained waiver of *Miranda* rights as reflected in Exhibt 1, CBPO Zuniga then advised Defendant, per Exhibit 3, that he is "authorized to administer the *immigration* laws...", is going to question Defendant, and "[a]ny statement you make may be used against you in this or any subsequent *administrative* proceeding." (Exh. 3 at p. 8 (emphasis added)). The advisory statements for Exhibit 3 make no mention of criminal prosecution, unless Defendant "lie[s] or give[s] misinformation", and instead focus entirely on immigration/administrative consequences: that Defendant appeared to be inadmissible and would be immediately removed if a decision was made to refuse him admission. (*Id.*). There can be no argument that the document reflects that it is aimed at "tak[ing]…your [i.e., Defendant's] sworn statement regarding your application for admission to the United States." (*Id.*).

More importantly, Exhibit 3 warns: "This may be your *only* opportunity to present information…."[7] (*Id.* at p. 8 (emphasis added)). Defense counsel points out that "the immigration consequences…can be in the forefront of the person's mind, even more than the criminal consequences….So, when Mr. Centeno-Sanchez is put in a position to say, you must decide now, are you going to talk to me or are you not going to talk to me, you have to answer these questions right now, then that becomes an issue." (Tr. at pp. 71-72). Further, CBPO Zuniga stressed to Defendant that he must answer the questions "as truthfully and honestly as he could." (*Id.* at p. 14; *see also id.* at p. 21).

The government argues that there is no "direct conflict" between the *Miranda* warnings and the warnings on Exhibit 3. (*See* Tr. at p. 63). The government overlooks that Defendant is told that if he does not truthfully answer questions at this time, then he may be removed. (*Id.*). The government's attempt in this case to simultaneously build both a prosecution case and an administrative case rendered the *Miranda* advisement meaningless. Pragmatically, in the administrative proceeding Defendant is faced with making a statement about the same facts in issue as in the criminal case and is told this may be his only chance to do so.

On this record, from Defendant's "perspective, it was entirely unclear what the nature of his rights was under the Fifth Amendment." *San Juan-Cruz,* 314 F.3d at 388. Specifically, Defendant could not reasonably ascertain from the warnings provided by the

---

[7] No evidence was presented concerning whether the statement accurately represents an alien's ability to present information during the removal process. Nor is it clear whether the administrative process commences now, after conviction, or after sentence is served, which could be years in the future.

- 11 -

government whether his statements could be used against him in a criminal proceeding. Moreover, any choice afforded under the *Miranda* advisement is foreclosed by Exhibit 3's advisement that this may be his only opportunity to answer questions before removal. "Requiring someone to sort out such confusion is an unfair burden to impose on an individual already placed in a position that is inherently stressful." *Id.* (citing *Miranda*, 384 U.S. at 436 ("the very fact of custodial interrogation exacts a heavy toll on individual liberty and trades on the weakness of individuals."); 457 (recognizing that an atmosphere of custodial interrogation "carries its own badge of intimidation.  To be sure, this is not physical intimidation, but is equally destructive of human dignity.")).

**CONCLUSION**

The advisement from Exhibit 3 rendered the earlier *Miranda* advisement confusing, and forced Defendant to choose between invoking his Fifth Amendment right and exercising the *only* opportunity to present information in the administrative proceeding. The facts of this case show that the advisement of rights was both confusing and coercive in violation of *Miranda* and the proscription of involuntary statements.

**RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, grant Defendant's Motion to Preclude Statements (Doc. 12).

Pursuant to 28 U.S.C. §636(b), the parties have **FOURTEEN (14) DAYS** from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court.  Any Objections and Responses to Objections

filed should be filed as **CR 14-200-TUC-CKJ**.   No Replies shall be filed unless leave is granted from the District Court.

Failure to file objections in accordance with Fed.R.Crim.P. 59 will result in waiver of the right to review.

Dated this 18th day of June, 2014.

*[signature]*

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE

- 13 -